UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MALIBU MEDIA, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:12-cv-12597-BAF-MJH |
| ) | |
| v. ) | |
| ) | |
| JOHN DOES 1-43, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF
LAW IN SUPPORT OF JOINDER**

I. INTRODUCTION

"[T]his case involves a copyright owner's effort to protect a copyrighted work from unknown individuals, who are allegedly illegally copying and distributing the work on the Internet." AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. 2012). On June 27, 2012 this Court granted Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference. Defendant, John Doe 27 filed a motion to quash the subpoena on September 27, 2012. At the hearing on this matter, the Court requested Plaintiff file a supplemental pleading regarding whether Plaintiff should be required to pay individual filing fees for each Doe Defendant. As explained below, requiring Plaintiff to pay separate filing fees would impermissibly burden its rights under the petition clause to bring its claim for copyright infringement.

II. LEGAL ARGUMENT

Your Honor requested Plaintiff address whether it should be required to pay a separate filing fee for each Doe Defendant. First, as a practical matter, not every Doe Defendant will be identified through discovery. From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person. Second, Plaintiff will often not pursue its claims against many Doe Defendants. As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty military, elderly, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims. This will inevitably reduce the number of Defendants joined together. Ultimately, if Plaintiff has to pursue each Defendant individually without knowing his or her identity, Plaintiff will be left with less

latitude to evaluate cases and make reasonable resolutions including the decision not to prosecute.

Third, it is simply impossible for Plaintiff to pay a filing fee for each individual that infringes its movies on the Internet. The creators and owners of Malibu Media work tirelessly to create an artistic and unique product, which has evinced a significant demand. Malibu Media simply desires to preserve its core business by enforcing its copyrights and protecting its valuable product from theft. The creators of Malibu Media invest significant resources in pursuing all types of anti piracy enforcement such as Digital Millennium Copyright Act ("DMCA") take down notices and direct efforts aimed at infringing websites. Despite sending thousands of DMCA notices a day, the infringement continues. Malibu Media's movies are constantly illegally streamed and made available for download. Since March, Plaintiff's investigator has recorded over 100,000 infringements per month of its copyrighted works – on BitTorrent alone. Without these suits, infringers would feel free to take without consequence.

Malibu Media's goal is to successfully sue the most egregious infringers and at the same time establish a significant deterrent for those tempted to take its products for free. In the year 2012, Malibu Media has provided the federal judiciary with $119,700.00 in federal filing fees, an amount significantly more than many corporations. Malibu Media seeks to sue roughly 600 individuals a month, or roughly half of one percent of the infringement it faces. If it were forced to pay filing fees for each defendant, it would face filing fees of over $200,000 a month. This is simply beyond its financial capabilities as a company.

In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized. As the former Register of Copyrights, Mary Beth Peters stated to the Senate Judiciary, "[w]hile we

3

would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1]

Courts recognize that a plaintiff has a right under the petition clause to seek redress for its injuries. "[The right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 741 (1983). Courts have further recognized that an inability to pay court fees should not prevent a legitimate claim for relief. See Ripp v. Nickel, 838 F. Supp. 2d 861, 863 (W.D. Wis. 2012) (prisoner must be provided postage to mail pleadings to the court); Boddie v. Connecticut, 401 U.S. 371, 383 (1971) (state cannot deny access to its courts to individuals seeking a divorce); Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966) (finding poll taxes an unconstitutional barrier to vote).

Recently, the District Court of Columbia examined the issue of filing fees in copyright infringement cases in an evidentiary hearing on the issue of joinder. "The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127–28 (Apr. 27, 2012)." AF Holdings LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. 2012). Judge Howell expressly found that individual filing fees would impossibly burden plaintiff's Petition Clause right.

> Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. This burden for the plaintiff—not to mention the

---

[1] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

4

> <u>judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity.</u> Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just, speedy, and inexpensive determination of th[e] action." *Lane,* 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party was prejudiced by joinder).

<u>Id.</u> at *13. (Emphasis added).

The District Court of Colorado also addressed the issue of filing fees in copyright infringement actions and noted that requiring a plaintiff to pay the filing fees for each defendant limited its ability to protect its rights, contrary to Fed. R. Civ. P. 1. See <u>Patrick Collins, Inc. v. John Does 1-15</u>, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. 2012).

> If the Court were to sever the Doe Defendants at this juncture, Plaintiff would face significant obstacles in its efforts to protect the Work from copyright infringement, which would only needlessly delay the suit. Furthermore, Plaintiff would need to file individual cases, which would require Plaintiff to pay the Court separate filing fees in each case, further limiting its ability to protect its legal rights. *See* Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

<u>Id.</u> at *3.

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore. See <u>Sony v. Tennenbaum,</u> 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement. See <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd</u>. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers. See <u>In re Charter Communications, Inc. Subpoena Enforcement Matter</u>, 393 F.3d 771, 774 (8th Cir. 2005); <u>Arista Records, LLC. v. Doe 3</u>, 604 F.3d 110 (2d Cir. 2010). Courts unanimously hold that Plaintiff's

First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer. See e.g., Sony Music Entertainment, inc. v. Does 1-40, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to enforce one's copyrights against online infringement is to bring suits like the one currently before this Court. Requiring copyright holders to pay a filing fee for each individual infringement impermissibly burdens Plaintiff because it cannot bring the petitions that need to be brought. Here, Plaintiff would simply be unable to afford even .05% of the individual actions against infringers each month. Plaintiff would not be able to effectively deter infringement. With out this ability, copyright owners would have a right without a remedy. Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." Marbury v. Madison, 1 Cranch 137, 1803 WL 893, *17 (U.S. 1803).

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court permit joinder of the Defendants in this action.

Dated: November 21, 2012

                                              Respectfully submitted,

                                              NICOLETTI & ASSOCIATES, PLLC

By:   /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
E-Fax: (248) 928-7051
Email: paul@nicoletti-associates.com
*Attorney for Plaintiff*

6

## CERTIFICATE OF COMPLIANCE

Pursuant to MI R USDCTED LR 5.1(a) I hereby certify that the PLAINTIFF'S MEMORANDUM IN OPPOSITION has been prepared using one of the font and point selections approved by the Court in MI R USDCTED LR 5.1(a)(3). This document was prepared using Times New Roman (12 pt.).

Dated: November 21, 2012

By:   /s/ *Paul J. Nicoletti*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   /s/ *Paul J. Nicoletti*